IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT AND CAROLYN LUNDEEN,

Plaintiff,

v.

JOHN T. MINEMYER d/b/a LOZON
SOLUTIONS,

Defendant.

Civil Action No. 09-CV-3820

District Judge Robert M. Dow, Jr.

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
### DEFENDANT'S MOTION FOR SANCTIONS UNDER RULE 11

This Court has noted that "[t]he central purpose of Rule 11 is to 'deter abusive litigation practices,'" and that "while 'the Rule 11 sanction serves an important purpose, it is a tool that must be used with the utmost care and caution.'" *ACE Hardware Corp. v. Marn, Inc.*, 2008 WL 4286975 *23 (N.D. Ill. 2009) (quoting *Corley v. Rosewood Care Ctr.,* 388 F.3d 990, 1013-1014 (7th Cir. 2004); *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Serv.*, 9 F.3d 1263, 1269 (7th Cir. 1993)), Ex. A hereto. But nothing about Plaintiffs' or their counsel's conduct in this action constitutes "abusive litigation practices." On the other hand, Defendant's instant motion is unsupported by and mischaracterizes the law of false patent marking, misstates the factual record, and focuses largely on extraneous and irrelevant facts alleged to have occurred in a co-pending action before Judge Cole *after* Plaintiffs filed their complaint in the instant action. Defendant's motion should be denied under any standard, let alone under the "careful and cautious" standard applied to a Rule 11 analysis.

Given the serious nature of the allegations in Defendant's Rule 11 motion, Plaintiffs and their counsel respectfully request oral argument on the issues at bar unless the Court is inclined to deny Plaintiff's motion on the briefs.

## I.     The Alleged Misconduct Of Plaintiffs And Their Counsel

Defendant broadly alleges that "Plaintiffs Lundeen and their attorneys[1] have violated [Rule 11] in at least two aspects of the present litigation."  (Def.'s Rule 11 Mot., p. 3 ¶ 4, Dkt. No. 13.) Although Defendant states that his analysis of these alleged violations is "discussed below" (*id.*), the ensuing 28 paragraphs of Defendant's motion neither include headings nor otherwise make clear what two violations of Rule 11 Defendant alleges Plaintiffs to have committed.  Faced with this uncertainty, Plaintiffs will respond to Defendant's factual and legal contentions in a format that is suitable for the presentation of Plaintiffs' arguments.

Defendant apparently contends that Plaintiffs' complaint was filed for an improper purpose because: (1) Plaintiffs allegedly are and have been aware that Defendant's mismarking of his products with the number of U.S. Patent No. 6,499,722 ("the '722 patent") was "an obvious mistake" and that Minemyer intended to instead mark his products with the "correct" number of his U.S. Patent No. 6,499,772 ("the '772 patent") (Def.'s Mot., p. 4 ¶¶ 7-8, Dkt. No. 13); (2) the quantum of damages to which Plaintiffs and the government might be entitled in the event of a finding of liability is allegedly inappreciable (*id.*, p. 8 ¶ 23, p. 13 ¶ 28); and (3) the present action is part of Plaintiffs' alleged "modus operandi" "to intimidate and harass Defendant Minemyer and his counsel" (*id.*, p. 9 ¶¶ 23-24).  As explained below, there is no support for Defendant's contention that Plaintiffs have done anything for an improper purpose or that Plaintiffs' complaint is not otherwise well-grounded.

## II.     *Anyone* May Bring A *Qui Tam* Action Under The False Marking Statute

The false marking statute expressly confers standing on *anyone* to sue for another's false marking.  In this regard, the statute provides: "Any person may sue for the penalty, in which event

---

[1] Although Defendant's motion is directed to Plaintiffs and their counsel, for ease of reference Plaintiffs and their counsel are hereafter collectively referred to as "Plaintiffs."

one-half shall go to the person suing and the other to the use of the United States." 35 U.S.C.

§292(b). Further, to the extent Defendant Minemyer has argued that Plaintiffs lack standing or are

otherwise foreclosed from maintaining an action under Section 292 because they have not pled a

direct, personal injury as a result of Defendant's conduct (and it is not clear whether Defendant has

made such an argument), Defendant is incorrect. In explaining the policy reasons behind the false

marking statute, the Federal Circuit recently stated:

> Forest argues that interpreting the fine of § 292 to apply on a per article basis would
> encourage "a new cottage industry" of false marking litigation by plaintiffs who have
> not suffered any direct harm. This, however, is what the clear language of the statute
> allows.
>
> * * *
>
> Rather than discourage such activities, the false marking statute explicitly permits *qui
> tam* actions. By permitting members of the public to sue on behalf of the
> government, Congress allowed individuals to help control false marking.

*Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1303-04 (Fed. Cir. 2009). Thus, as an initial

matter, Plaintiffs have standing to use under the false marking statute.

## III.     Defendant Mischaracterizes The False Marking Statute's Financial Penalty Provision

Without citation to authority, Defendant asserts that "[u]nder 35 U.S.C. § 292, the fine for

mismarking *with the intent to deceive* amounts to $500.00 per offense.[2] Plaintiffs Lundeen can

expect to receive half of that *if they prevail in the present action*, or the grand total of $250.00 (per

mold, as discussed below in paragraph 28)." (Def.'s Mot., p. 8 ¶ 23 (italics and parenthetical in

original) (footnote added).) Plaintiff echoes this assertion in numbered paragraph 28 of his brief,

stating, "Amazingly, Plaintiffs Lundeen have virtually nothing to gain financially from the present

litigation. The $500.00 fine of 35 U.S.C. § 292 applies *to each mold, not to each piece that emanates

from the mold*." (*Id.*, p. 13 ¶28 (emphasis added) (citing *Sadler-Cisar, Inc. v. Commercial Sales

Network, Inc.*, 786 F. Supp. 1287 (N.D. Ohio 1991); *Krieger v. Colby*, 106 F. Supp. 124 (S.D. Ca.

---

[2] Here, Defendant misstates the law. The penalty under Section 292 is not, as Defendant argues,
"$500.00 per offense" (*id.*), but is instead "not more than $500 for every such offense." 35
U.S.C. § 292(a).

1952).)  Defendant has not only misstated the law in this regard, but his counsel was aware of the misstatement at the time he filed Defendant's brief.

Specifically, in *Bon Tool* the Federal Circuit expressly cited to and rejected the rationale of the *Sadler-Cisar* and *Krieger* cases to which Defendant cites in paragraph 28 of his brief.  The Federal Circuit noted that *Sadler-Cisar*, among other cases, failed to "analyz[e] the effect of the 1952 amendment on the false marking statute," and that the "time-based approach" to the calculation of mismarking penalties under the *Krieger* line of cases "does not find support in the plain language of § 292."  *Bon Tool*, 590 F.3d at 1302.  Relevant to the issues at bar, the *Bon Tool* court held that "Section 292 clearly requires a *per article fine*."  *Id.* (emphasis added).

Neither Defendant's footnoting of the *Bon Tool* opinion on the page following his direct citations to *Sadler-Cisar* and *Krieger*, nor his statement that his argument "was correct when originally written and served" (Def.'s Mot., p. 14 n.3), excuses Defendant's disregard for binding law on an issue directly relevant to this Court's analysis.  Indeed, following a status conference in the patent infringement action involving the Lundeens and Mr. Minemyer (pending before Judge Cole), Plaintiffs' undersigned counsel implored Defendant's counsel to withdraw the instant motion in light of the Federal Circuit's construction in *Bon Tool* of the plain language of Section 292.  Defendant's counsel refused to do so.

Since long before filing the instant action, Plaintiffs' counsel has been aware of the Northern District of Georgia's opinion in *Enforcer Prods., Inc. v. Birdsong*, Case No. 93-CV-1701-CC, Slip Op. at 20-21 (N.D. Ga. Nov. 29, 2005), in which the court fined the defendants fifty dollars for each product and product packaging that they falsely marked.  Thus, consistent with the theory held by Plaintiffs' counsel since before he filed the complaint in this action, and based on the plain language of Section 292, the *Bon Tool* court clarified that the penalty for false patent marking is to be assessed on a per article basis.  As discussed below, such a penalty could provide a substantial, multimillion dollar recovery for the government and Plaintiffs in the case at bar – and, in any event, certainly

4

more than the "grand total of $250.00" (Def.'s Mot., p. 8 ¶ 23) suggested by Defendant based on his mischaracterization of applicable law. This does not evidence the "improper motive" alleged by Defendant.

**IV.   Defendant's Conduct Evidences An "Intent To Deceive The Public" Under Applicable Legal Standards**

To prevail on their claim for false marking, Plaintiffs "must show by a preponderance of the evidence that [Defendant] did not have a reasonable belief that [his] articles were properly marked." *Bon Tool*, 590 F.3d at 1300. In the instant case, there is evidence that despite having knowledge that the '722 patent did not cover his reverse-threaded conduit couplers, Defendant Minemyer continued to mismark those products. Defendant could not possibly have had a reasonable belief that his couplers were properly marked. At his deposition in the co-pending case before Judge Cole, Mr. Minemyer testified as follows:

Q.   Did you mark the '726 patent number on any of your couplers?

A.   The moldmaker put the number in on the mold, but he mis – he screwed up and put the wrong number.

Q.   And that ended up as appearing in production as a Kawasaki heavy industries patent?

A.   I guess that's what it corresponds to if you look it up. I don't know.

Q.   *Is that patent number still marked on your production couplers?*

A.   *We have not changed it because we aren't doing enough and we don't have the money to do it.*

Q.   *Is that to say that the incorrect patent number still appears on your couplers?*

A.   *We haven't gone back and modified all the molds. I have got too many molds.*

(Minemyer Dep. at 405, *Minemyer v. R-BOC Representatives, Inc., et al.*, Case No. 07-1763 (N.D. Ill.) (Cole, J.) (emphasis added), Ex. B hereto.)

Thus, Defendant has admitted that he knowingly continues to manufacture and sell mismarked products. Further, Defendant has stated that he has sold "millions of [his] couplers" since 1998. (Minemyer's Amend. Answers to Interrogs. of R-BOC at 10, *Minemyer v. R-BOC Representatives, Inc., et al.*, Case No. 07-1763 (N.D. Ill.) (Cole, J.) (emphasis added), Ex. C hereto.)

Although Defendant alleges that his mismarking has been the result of an unintentional and "obvious mistake" (Def.'s Mot., p. 4 ¶ 8), this argument misses the point. The Federal Circuit has made clear that "[a]n assertion by a party that it did not intend to deceive, standing alone, 'is worthless as proof of no intent to deceive where there is knowledge of falsehood.'" *Id.* (quoting *Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). Further, the law required Defendant to stop mismarking his products once he received notice that he was doing so and renders determinations concerning Defendant's intentions as questions of fact not amenable to summary judgment. *See, e.g., Mohawk Industries, Inc. v. Interface, Inc.*, 2008 WL 5210418 *8 (N.D. Ga. 2008) ("[T]he Court agrees with Plaintiffs that, even if Defendant's initial decision to mark carpet tiles was based on an inadvertent mistake, a question of fact remains regarding the reasoning behind Defendant's decision to continue marking carpet tiles with the '656 patent number after it was placed on notice that doing so could be improper."); *Meyer v. Rodex Sales & Servs., LLC*, 2006 WL 3355004 *7 (D. Idaho 2006) (refusing to grant summary judgment where plaintiff's alleged intent to deceive and defendant provided contrary affidavit that marking was result of mistake); *Blank v. Pollack*, 916 F. Supp. 165, 173 (N.D.N.Y. 1996) (denying motion for summary judgment despite no specific evidence of intent where defendant failed to remove word "patented" from product after notice that product was not covered by patent).

Thus, Defendant's volitional decision to continue mismarking perhaps millions of his products after receiving notice of the error extinguishes any possible argument that he "ha[d] a reasonable belief that [his] articles were properly marked." *Bon Tool*, 590 F.3d at 1300. At a minimum, the issue of his intent raises questions of fact to be determined by a jury. Under any

circumstances, the applicable law does not support a finding that Plaintiffs filed the complaint in the instant action for an improper purpose.

## V.     Defendant Misstates The Facts Concerning The Kawasaki '722 Patent

Defendant's assertion that "in fact, six of the digits in the patent number on Defendant Minemyer's couplers are correct" (Def.'s Mot., p. 4 ¶ 7) is simply incorrect and contradicts the record.  Specifically, Defendant argues that he mistakenly marked his couplers with the number of the Kawasaki '722 patent instead of the number of the "correct '772" patent.  (*Id.*)  *But Defendant's '772 does not apply to his single-piece, reverse-threaded couplers any more than the Kawasaki '722 patent does.*  Even a cursory review of the claims of Defendant's '772 patent reveals that each of the patent's four claims is specifically directed to couplers having a *two-piece construction* – instead of the one-piece construction of Defendant's couplers that improperly bear the '722 patent number.[3] (Def.'s '772 Patent, Claims 1-4, cols. 15-18, Ex. A to Def.'s Mot., Dkt. No. 13-1.)  In this regard, claims 1 and 2 of the '772 patent recite a "conduit coupling" that includes the following elements that reveal a two-piece coupler construction: "an elongate, tubular first connector" and "an elongate tubular second connector."  (*Id.*, Claim 1, col. 15, l. 28, l. 49; Claim 2, col. 16, l. 10, l. 33.)  Similarly, claims 3 and 4 of the '772 patent disclose methods utilizing a "conduit coupling" "including *first* and *second* connectors."  (*Id.*, Claim 3, col. 16, ll. 62-63; Claim 4, col. 17, ll. 27-28.)

As the Federal Circuit has noted, "[w]hen the [false marking] statute refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked."  *Clontech Labs*, 406 F.3d at 1352.  Defendant cannot credibly claim that his mismarked coupler is covered by at least one claim of the Kawasaki "722 patent *or* Defendant's own '772 patent.  Thus, neither Defendant nor his counsel has a good faith basis to assert that Defendant's mismarked couplers should instead have been marked with the

---

[3] A representative sample of Defendant's improperly marked single-piece coupler is depicted in paragraphs 10 and 12 of Plaintiff's complaint, Dkt. No. 1.

number of Defendant's '772 patent. This, too, Plaintiffs' counsel shared with Defendant's counsel when requesting that Defendant withdraw the instant motion. Notwithstanding, Defendant asks the Court to accept what is not so – namely, that Defendant's mismarking would have been remedied merely by substituting, as Defendant's counsel puts it, "the correct '772" patent number for the mismarked '722 patent number. But even if Defendant were to mark his products with the '772 patent number, they would *still* be mismarked under Section 292 and applicable case law. Yet, remarkably, in his Rule 11 motion Defendant admits several times that that is exactly what he intended to do.

Thus, Defendant's assertion that Plaintiffs "themselves know that the mismarking was merely a mistake" (Def.'s Mot., p. 6 ¶ 17) ignores the only relevant issues: first, Defendant, by his own admission, has knowingly sold products mismarked with the '722 patent after receiving notice of the mismarking; and second, Defendant's failure to mark the '772 patent number was not "merely a mistake" because the '772 patent is wholly unrelated to the mismarked products at issue.

## VI.     Defendant's Discussion Concerning Extraneous Issues In The Co-Pending Action Is Irrelevant

Defendant devotes much space in his motion to discussing alleged misdeeds committed by Plaintiffs' counsel in the co-pending patent infringement action before Judge Cole. The record in that case, however, reveals that Defendant and his counsel have been repeatedly admonished by the Court for failure to comply with the Federal Rules and court-ordered deadlines, and exhibiting a general disregard for the orderly process of the Court. Indeed, and contrary to Defendant's suggestion in his instant motion, Judge Cole's decisions to twice reschedule the trial date were based on Defendant's failure to follow the rules and abide by court-ordered deadlines. Although Defendant can offer no similar examples of such behavior by Plaintiffs or their counsel (because there are none), the following is merely a representative sample of excerpts from the record in *Minemyer v. R-BOC Representatives, Inc., et al.*, Case No. 07-1763 (N.D. Ill.) (Cole, J.):

- On April 23, 2009, Judge Cole granted Defendants' (including the Plaintiffs in the instant action) motion to continue all dates, including the trial date, by six weeks, stating: "I think there has been substantial noncompliance with discovery schedules in this case by plaintiff." (Hr'g Tr. at 31, April 23, 2009, *Minemyer v. R-BOC Representatives, Inc., et al.*, Case No. 07-1763 (N.D. Ill.) (Cole, J.), Ex. D hereto.)

- At a November 9, 2009 hearing, the following colloquy occurred between Judge Cole and Mr. Minemyer's counsel:

  > MR. CHALMERS: Well, first off, I should apologize. Mr. Friedman this morning failed to convey the only thing we meant to convey to the Court, which was we were no longer opposing this motion, and that we were looking to –
  >
  > THE COURT: Well, you know, I think that's terrible. I really do. He [Mr. Friedman] makes an ex parte telephone call to my chambers to tell me that he can't be here. He doesn't say that. As it was relayed to me, he wanted this thing put over because his wife was being honored, for what he did not say, and he and she sat here last Friday when I set this for 1:00 o'clock, and nobody uttered a peep.
  >
  > Now, I don't expect you to say, oh, no, Mrs. Friedman is being honored, you know, as the woman of the year for who knows what, and then to have me work on an opinion, a six-page opinion over the weekend. I have to tell you, Mr. Chalmers, that's horrible. I spent a fair amount of time doing this that I could have devoted to a lot of other cases, and then to have your co-counsel make an ex parte telephone call in violation of the canons of ethics, what a group. That's terrible.
  >                     * * *
  > THE COURT: There will be no continuance, Mr. Chalmers. You are late on one more thing, I won't consider it.

(*Id.*, Hr'g Tr. at 3-4, 7, November 9, 2009, Ex. E hereto.)

- On November 9, 2009, Judge Cole granted Defendants' (including the Plaintiffs in the instant action) Emergency Motion to Continue the Trial, stating, in relevant part:

  > Not having been told that [Mr. Minemyer's] objection was being withdrawn, a substantial amount of time was spent this morning – I do not count the less time spent over the weekend – drafting the opinion deciding the Emergency Motion to Continue the Trial Date

> which as of late Friday, November 6, 2009, was being vehemently
> and unconditionally opposed. That time could have been profitably
> devoted to what Judge Easterbrook has called the endless "queue" of
> cases that require judicial attention. *Szabo Food Service, Inc. v.
> Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987). *Cf. Smoot v.
> Mazda Motors of America*, 469 F.3d 675, 677 (7th Cir. 2006)
> (Posner, J.); *Channell v. Citicorp Nat. Services, Inc.*, 89 F.3d 379,
> 386 (7th Cir. 1996). In response to questions posed this afternoon to
> defense counsel in court, I was told that they also had not been
> informed before this afternoon's court appearance that the plaintiff
> was withdrawing his objection to the Emergency Motion. Judicial
> time is limited and counsel ought not, by act or omission, contribute
> to its squandering.

(*Id.*, Minute Order, November 9, 2009, Dkt. No. 272, Ex. F hereto.)

- On October 27, 2009, en route to granting summary judgment invalidating eight of

  the 12 asserted claims of Mr. Minemyer's '726 patent-in-suit, Judge Cole stated:

> In an attempt to stave off summary judgment, the plaintiff relies almost
> entirely on his 27-paragraph, Local Rue 56.1(b)(3)(C) statement of
> additional facts requiring denial of the defendants' motion. In paragraph
> after paragraph, the plaintiff discusses his activities, in a narrative form, in
> the year or so leading up to his patent application. The problem is, with
> isolated exceptions, the plaintiff makes absolutely no reference to any
> evidence.

*Minemyer v. R-BOC Representatives, Inc., et al.,* 2009 WL 3464141 *4 (N.D. Ill. 2009).

- On October 27, 2009, Judge Cole granted, *in toto*, Defendants' motion for summary

  judgment of non-liability under the Lanham Act and Plaintiff Minemyer's Coterminous

  State Law Claims.

*Minemyer v. R-BOC Representatives, Inc., et al.,* 2009 WL 5275826 (N.D. Ill. 2009).

- On April 30, 2010, Judge Cole made the following minute entry, "Status hearing held and

  continued to June 1, 2010 at 8:30 a.m. Counsel for the plaintiff failed to appear or to call

  court to say that he could not attend." (*Id.*, Minute Order, April 30, 2010, Dkt. No. 302,

  Ex. G hereto).

Thus, rather than demonstrating that Plaintiffs in the instant action have engaged in a continuing pattern of "harassment and intimidation" that spans two pending actions (Def.'s Mot., p. 14, ¶ 28), the record clearly reveals that Defendant and his counsel have frustrated the judicial process and been admonished by the Court for doing so. For Plaintiffs part, they and their counsel have diligently prepared their defenses in the co-pending case before Judge Cole, resulting in the issuance of two summary judgment orders disposing of the overwhelming majority of Mr. Minemyer's case, and have advanced a legitimate, good faith claim in this action based on the record, including Mr. Minemyer's admissions, Section 292, and applicable case law.

Oddly, Defendant cites to the Seventh Circuit's opinion in *Kapco Mfg. Co. v. C & C Enterprises, Inc., Appeal of Eugene F. Friedman*, 886 F.2d 1485 (7th Cir. 1989), a case in which Defendant's counsel in the case at bar was personally sanctioned in the amount of $46,780.07. (Def.'s Mot., p. 11, ¶ 24.) Although noting numerous examples of Mr. Friedman's misconduct in *Kapco*, the Seventh Circuit summarized its affirmance of the district court's sanction by stating, "Friedman was a zealous advocate but not a responsible one. His conduct and that of his client constitutes a severe abuse of the judicial system." *Kapco*, 886 F.2d at 1497. Plaintiffs' counsel believes and has stated in the co-pending patent infringement action that Defendant's counsel, Mr. Friedman, has exhibited conduct in that action similar to that for which he was previously sanctioned. Indeed, representative examples of that conduct and citations to the record are set forth above. But those issues are not relevant to the instant action. Defendant has failed to present any evidence that Plaintiffs or their counsel filed the complaint in this action for an improper purpose or that the pleading otherwise fails to pass muster under Rule 11.

## VII.     <u>Conclusion</u>

For the foregoing reasons, Plaintiffs and their counsel respectfully seek an Order denying

Defendant's Motion for Sanctions Under Rule 11.

Respectfully submitted,

Dated: May 17, 2010                    <u>/s/ Matthew G. McAndrews          </u>
                                       Matthew G. McAndrews
                                       Niro, Haller & Niro
                                       181 W. Madison Suite 4600
                                       Chicago, Illinois  60602
                                       Phone: (312) 236-0733
                                       Facsimile: (312) 236-3137
                                       Email: mmcandrews@nshn.com

                                       *Attorney for Plaintiffs,*

                                       Robert and Carolyn Lundeen

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 17, 2010, I electronically filed the preceding **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS UNDER RULE 11** with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

Eugene Frederic Friedman, Esq.                    Douglas M. Chalmers, Esq.
Gail Tuler Friedman, Esq.                          Law Offices of Douglas M. Chalmers
Friedman & Friedman, LTD.                          77 West Wacker Drive
Printers Square – Suite 710                        Chicago, Illinois  60601
780 South Federal Street                           Phone:  (312) 606-8700
Chicago, Illinois 60605                            Fax:  (312) 444-1028
Phone: (312) 922-8882                              E-mail:  dmc@chalmers-law.com
Fax:  (312) 922-3616
E-mail: gene@friedmanpatents.com
E-mail: gail@friedmanpatents.com

*Attorneys for Defendant,* John T. Minemyer d/b/a Lozon Solutions


/s/ Matthew G. McAndrews