Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr | **Sitting Judge if Other than Assigned Judge** | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 3820 | **DATE** | 12/15/2010 |
| **CASE TITLE** | Lundeen vs. Minemyer | | |

**DOCKET ENTRY TEXT**

Before the Court is Defendant John Minemyer's motion asking the Court to impose Rule 11 sanctions [13] on Plaintiffs Robert and Carolyn Lundeen and their counsel in connection with the filing of a false marking lawsuit that Defendant contends is being pursued solely for the purpose of harassing and intimidating him. For the reasons below, Defendant's motion [13] is denied.

■[ For further details see text below.]   Notices mailed by Judicial staff.

**STATEMENT**

Defendant Minemyer manufactures and sells plastic couplers that are used to join lengths of conduit for telecommunications and other industries. Minemyer owns two related patents that cover the two different types of couplers that he makes: the '772 patent and the '726 patent. The '726 patent covers a single-piece coupler – the type of coupler at issue in the instant litigation. The single-piece coupler is manufactured and produced using 14 different molds. Half of the single-piece coupler molds (seven) are marked with patent number '722. As a result, a "significant percentage" of single-piece couplers that Minemyer has sold are marked with patent number '722. See [1, at ¶ 8]. The '722 patent is not owned by or assigned to Minemyer, and does not relate in any way to the couplers he produces. Rather, the '722 patent pertains to a type of screw jack, and is assigned to Kawasaki Industrial Co., Ltd.

On June 24, 2009, Plaintiffs brought this *qui tam* action against Defendant, claiming that Defendant had violated 35 U.S.C. § 292, the "false marking" statute, by mismarking the couplers with the '722 screw jack patent number. [1] Section 292(a) provides that:

> Whoever, without the consent of the patentee, marks upon, or affixes to * * * anything made, used, offered for sale, or sold by such person within the United States * * * the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; * * * [s]hall be fined not more than $500 for every such offense.

| STATEMENT |
|---|

35 U.S.C. § 292(a). Subsection (b) of the false marking statute provides that one-half of the penalty in a prevailing false marking suit will go to the party bringing the suit, and the other half will go to the use of the United States. 35 U.S.C. § 292(b). When a defendant uses a mark that he knows is false, a presumption of intent to deceive the public applies. *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362-63 (Fed. Cir. 2010). A defendant bears the burden of rebutting this presumption by a preponderance of the evidence. *Id.* at 1364. Plaintiffs' complaint [1] alleges that Defendant "is and has been aware" that the single-piece couplers covered by the '726 patent are improperly marked with the '722 screw jack patent number, has failed to remedy the problem, and thus has presumptively intended to deceive the public by selling the mismarked couplers.

In this motion [13], Defendant contends that although he has long been aware that the single-piece couplers are marked with the incorrect patent number, he had no intent to deceive the public. Defendant further contends that Plaintiffs' attorneys are cognizant of the unintentional nature of the mismark, know that they will be unable to prove the intent element of the false marking allegation, and have filed the instant action merely to harass and intimidate Defendant in a co-pending patent infringement action in violation of Rule 11.[1]

Rule 11 requires an attorney to certify, to the best of his knowledge, that any pleading the attorney presents to the court is not being presented for any improper purpose – such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation – and that the legal contentions asserted in the pleading are nonfrivolous and have or are likely to have evidentiary support. Fed. R. Civ. P. 11(b); see also *Jimenez v. Madison Area Tech. College*, 321 F.3d 652, 656 (7th Cir. 2003). "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004) (internal quotation marks and citations omitted). Rule 11 thus serves to protect courts and parties against "callous disregard for governing law or the procedures of the court." *Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir. 1992).

Courts have cautioned that Rule 11 should not be used as "a battleground for satellite controversies where, in effect, the tail would wag the dog, potentially diverting judicial resources from the prompt disposition of the merits of controversies." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Financial Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993). To forestall such use, a court should apply Rule 11 sanctions only "with utmost care and caution." *FDIC v. Tefken Construction and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir. 1988). Indeed, even when a court has ruled that a party has been "wrong on the law," sanctions against that party do not flow inevitably. *Harlyn Sales*, 9 F.3d at 1270. Rather, the test is whether "competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in their complaint." *Id.* at 1269. Thus, a court analyzing a Rule 11 claim must assess the subjective belief and

---

[1] On March 29, 2007, Minemyer filed a lawsuit in this district against Robert and Carolyn Lundeen for allegedly infringing on the couplers' patents (the "co-pending litigation"). See *Minemyer v. R-BOC Representatives, Inc.*, 695 F. Supp. 2d 797 (N.D. Ill. 2009).

**STATEMENT**

purpose of the attorney signing the pleading as well as whether the attorney's mental state is based upon an objectively analyzed reasonable inquiry into the basis for the facts alleged and a reasonable inquiry into the law. *Id.* at 1270. The court has considerable discretion in assessing the underlying case, the attorneys' behavior, and the applicable law pursuant to the Rule 11 analysis. *Id.*

In his Rule 11 motion [13], Defendant acknowledges his awareness that many of the single-piece couplers he sold were marked with a patent number that did not cover them – the '722 screw jack patent number. However, he states that he was unable to remedy the problem by making new molds that lack the '722 imprint because his business "has been totally destroyed by the activities of Plaintiff Lundeens and their codefendants" in the patent infringement suit. [13, at ¶ 31]. Moreover, Defendant claims that Plaintiffs' attorneys recognized or should have recognized that Defendant's mismarking of the couplers could not have been done with intent to deceive the public for several reasons. First, Defendant contends that Plaintiffs' attorneys must have known that he lacked intent to deceive the public because the mismark was obviously something akin to a scrivener's error, in that the proper patent number '772 – the existence of which Plaintiffs' attorneys were aware – was mistakenly transcribed as '722 in the coupler molds. Second, Defendant contends that Plaintiffs' attorneys must have known that he lacked the requisite intent because the public would have been aware of the obvious differences between the coupler patent and the '722 screw jack patent if they looked up the patents.[2] Third, Defendant alleges that he "suffers grievously" from the use of the '722 patent number on his products because the mismark limits the damages to which he would be entitled should he prevail in his co-pending patent infringement suit against Plaintiffs. [13, at 15]; see also 35 U.S.C. § 287 (limiting damages recoverable in patent infringement suit where patented article is not marked with the patent number). Finally, Defendant points to several purported instances of misbehavior by Plaintiffs' attorneys in the co-pending infringement litigation – including allegedly willful delay and a "vituperative"

---

[2] Both parties spend considerable time discussing the conflation of the '722 and '772 patent numbers in support or defense of the intent-to-deceive element of the § 292 claim. For example, Defendant claims that the mismark was an innocent and understandable oversight given the similarities between the two patent numbers. Plaintiffs respond that this argument falls short because – as Defendant later concedes – the '726 patent rather than the '772 patent is the patent that covers the single-piece couplers at issue in this case.

[3] Initially, Defendant contended that Plaintiffs lacked any financial incentive to bring the false marking suit, and thus could only have intended to bring the suit for harassment and intimidation purposes. Specifically, Defendant stated in his initial motion that Plaintiffs would only stand to gain approximately $250 from the instant action under § 292(a), citing to various district courts' application of a per-mold rather than per-article calculation of the maximum award that a court could assign to prevailing plaintiffs (see *Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F. Supp. 1287 (N.D. Ohio 1991); *Krieger v. Colby*, 106 F. Supp. 124 (S.D. Cal. 1952)). However, in their response brief, Plaintiffs point out that a recent Federal Circuit decision clarifies that a per-article rather than per-mold calculation applies, and they thus stand to gain a multi-million-dollar award should they prevail in the case. See *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009). In light of *Forest Group*, Defendant has abandoned his initial contention that the lack of potential for financial gain is evidence of the frivolity and abusiveness of the litigation [see 23, at 4 ("[t]he best course at this point would appear to [*sic*] simply remove this particular issue from consideration in light of the new Federal Circuit decision in *The Forest Group, Inc. v. Bon Tool Co.*")].

**STATEMENT**

response to Minemyer's motion to reconsider – in an effort to show that harassment is "the modus operandi of Plaintiffs Lundeen and their counsel."[3]  [13, at 9-11.]

In their response, Plaintiffs argue that, irrespective of whether Defendant's mismark was initially an innocent error, he may nonetheless be liable under § 292 for failing to remedy the mismark after he learned of the error.  Specifically, Plaintiffs contend that although Defendant has admitted to being aware that the single-piece couplers are erroneously marked with the '722 screw jack patent number, Defendant continues to knowingly manufacture and sell the mismarked couplers.  Plaintiffs contend that Defendant had an obligation to stop producing the mismarked products once he became aware of the error, and that his failure to do so presents a question of fact for purposes of determining § 292 liability.[4]  Plaintiffs further argue that if any party is guilty of harassment, it is Minemyer; Plaintiffs cite various instances in which the presiding judge in the infringement suit has made what Plaintiffs contend are unfavorable comments regarding Defendant and his attorneys for frustrating the judicial process.

Mindful of the care and caution with which it must proceed in deciding a Rule 11 motion, the Court finds that Defendant has not met the high burden of showing that Rule 11 sanctions are warranted.  See *Tefken Construction*, 847 F.2d at 444.  Preliminarily, the Court notes that although Defendant alleges that Plaintiffs' attorneys sought to harass or intimidate him by waiting two years to bring the instant suit, Plaintiffs are still well within the applicable five-year statute of limitations.  See 28 U.S.C. § 2462.  Furthermore, although Defendant has asserted potentially plausible arguments that he lacked the requisite intent for liability under § 292, these assertions go to the merits of the false marking claim, which the Court is in no position to prejudge as of this early stage of the case.  Those arguments do not, by themselves, substantiate a claim that Plaintiffs' attorneys abused the litigation process by contending that Defendant did in fact possess the requisite intent.  Nor does the Court find that Defendant has otherwise shown that Plaintiffs' attorneys have engaged in the type of egregious or abusive behavior that warrants Rule 11 sanctions.  *Harlyn Sales Corp.*, 9 F.3d at 1269-70.  Finally, although both parties devote much attention in their briefs on this motion to alleging that the other party abused the litigation process in the co-pending patent infringement action, such allegations are properly made before the court hearing that case, not this Court.[5]  In this case, Defendant has neither succeeded in showing that Plaintiffs' attorneys have an overarching "modus operandus" of harassment nor in

---

[4] Defendant retorts that, as Plaintiffs were aware, he was unable to change the molds after becoming aware of the mistake because he lacked the funds to do so.  Plaintiffs' and Defendant's arguments as to whether the element of intent can be established for purposes of § 292 liability go to the merits of the false marking claim, and bear only tangentially, if at all, on whether Plaintiffs are subject to Rule 11 sanctions.  The Court therefore does not make a determination for purposes of deciding this motion as to which party gains the advantage, if any, in proving or rebutting the intent-to-deceive charge.

[5] Both parties spill considerable ink in an effort to educate the Court as to various perceived transgressions in which the other party purportedly has engaged in the co-pending litigation.  The pages devoted to those matters demonstrate that there is no love lost between the parties, but otherwise serve only as a distraction to the proper litigation of this action, including the motion now before the Court for ruling.

| STATEMENT |
|---|
| otherwise demonstrating that the complaint filed by Plaintiffs is frivolous or has been presented for improper purposes. Thus, exercising its considerable discretion to make a determination pursuant to a Rule 11 violation charge, the Court denies Defendant's motion for sanctions [13] without prejudice. If it should appear to the Court at a later stage of this case that any party has (or is) engaged in "abusive litigation practices," Rule 11 sanctions remain available. |